# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE,<br>  Plaintiff,<br><br>v.<br><br>JAMES SARACENI,<br>  Defendant. | CIVIL ACTION NO.<br>3:05cv415 (SRU) |

## RULING and ORDER

This case principally involves a claim brought under 42 U.S.C. § 1983 ("section 1983") and a related state law claim, arising out of an incident on October 16, 2003, during which the plaintiff complains that James Saraceni, a Norwalk police officer, sexually assaulted her.

The plaintiff, Jane Doe, commenced this action on March 8, 2005, and subsequently filed amended complaints on December 14, 2005 and July 23, 2006. A bench trial was scheduled for February 5, 2007, but during a telephone conference on January 12, 2007, defense counsel requested permission to file a late motion for summary judgment; plaintiff's counsel did not object. *See* Jan. 12, 2007 Conf. Mem. (doc. #54). On February 2, 2007, Saraceni filed a motion for summary judgment, making two principal arguments: (1) this court lacks jurisdiction under section 1983 because no reasonable fact-finder could find that Saraceni acted under color of law, and (2) no reasonable fact-finder could find that Doe has established a prima facie case of sexual assault. For the reasons that follow, Saraceni's motion for summary judgment is denied, and the case shall proceed to trial.

  **I.**  **Factual Background**

During the relevant time period, James Saraceni was an officer in the Norwalk Police Department and a lawyer admitted to the bar of Connecticut. *See* Saraceni's Local Rule 56

Statement ¶ 8; Doe's Local Rule 56 Statement (admitting ¶ 8). Doe first met Saraceni on August 1, 2001 when she went to police headquarters to complain about a traffic violation she received from another officer. *See* Saraceni's Local Rule 56 Statement ¶ 11; Doe's Local Rule 56 Statement (admitting ¶ 11). During that conversation, Doe learned that Saraceni was a lawyer. *Id.* Subsequently, Doe interacted with Saraceni regarding a speeding ticket. *Id.* ¶ 12. Following a car accident in May 2002, Doe hired Saraceni to represent her to file a claim against the insurance company of the other driver. *Id.* ¶ 13. As a result, she saw Saraceni every couple of weeks to discuss her case, and sometimes Doe and Saraceni met at the Norwalk Police Substation ("police substation"). *Id.* ¶ 13.

On October 15, 2003, Saraceni was assigned to work for the Norwalk Police Department at the police substation from noon to 8:00 p.m. *Id.* ¶ 10. Following his shift, Saraceni remained in his office at the police substation. At about 12:45 a.m. on October 16, 2003, Doe drove to the police substation to meet with Saraceni. *Id.* ¶ 16. When she arrived, she called Saraceni, who had been working on a legal matter, so that he would let her into the locked police substation. *Id.*

When Doe arrived, Saraceni was wearing his police uniform. *Id.* ¶ 18. She asked him if he had any liquor, and Saraceni produced a bottle of vodka. *Id.* ¶ 19. It is disputed whether Saraceni poured the vodka for Doe or whether she poured it herself. Nevertheless, the two had "a couple of shots." *Id.* ¶ 20. At some point after they started drinking, Saraceni handcuffed Doe with his police handcuffs. *See* Defendant's Exhibit A (Doe's sworn statement to the Norwalk Police Department). Doe later asked him to remove them, and he did. *Id.*

Doe had been drinking alcohol prior to coming to the police substation. *See* Saraceni's Local Rule 56 Statement ¶ 16; Doe's Local Rule 56 Statement (admitting ¶ 16). In the few

hours before coming to the police substation, Doe had drunk four or five shots of Goldschlager and a couple of sips of a Long Island Iced Tea. *Id.* It is unclear if she was visibly intoxicated, and it is also unclear whether Saraceni knew that she had been drinking prior to coming to the police substation. There is no dispute that, over a period of approximately three and one-half hours or less, Doe drank, at a minimum, six or seven shots of liquor and some amount of a Long Island Iced Tea. Saraceni was sitting next to Doe in front of his desk at the police substation when they were drinking the vodka shots. *Id.* ¶ 22.

At that point, Doe blacked out, and she does not remember what happened from then until noon or 12:30 p.m. on October 16, 2003. *Id.* ¶ 22. Doe woke up on October 16th in her home, and her car was parked outside her home; thus, it is reasonable to infer that at some point on October 16, 2003, she traveled from the police substation to her home in her car. It is disputed whether Saraceni forced her to drive her car home.

When Doe woke up on October 16th, she was not wearing underwear. *Id.* ¶ 23. She also noticed vomit on her jeans. *Id.* ¶ 23. Doe went to the bathroom, and after having a difficult bowel movement, saw blood on the toilet paper and blood on her rear end. *Id.* ¶ 24. She called the Darien Police Department, and an officer there referred her to a sexual assault counselor. Defendant's Exhibit A.

The following facts are disputed, and are all contained within Doe's sworn statement to the Norwalk Police Department (Defendant's Exhibit A). At some point in the late afternoon on October 16th, Saraceni called Doe.[1] Doe asked him, "What did I do last night?" Saraceni

---

[1] Doe recorded the phone conversation. Saraceni argues that the recorded conversation would be inadmissible at trial. Even assuming the tape is not admissible, however, Doe could still testify to the statements Saraceni made to her on the phone because she has personal

responded, "it's not what [you] did it's who you did." Saraceni kept repeating "it was who I did." Saraceni also said, "we fooled around a little," but then said, "a lot." He said "there was a lot of nakedness going on." Doe asked him who was naked, and Saraceni said "both of us." Saraceni told Doe that they did not have sex, but also said that "it wasn't my fault" because he was "really tired." Saraceni also said that Doe had hit her head on his police desk.

On October 17, 2003, over a day after Doe alleged that the sexual assault occurred, Doe went to the Norwalk Police Department to report the alleged sexual assault. *See* Saraceni's Local Rule 56 Statement ¶ 24; Doe's Local Rule 56 Statement (admitting ¶ 24). An officer took her to the Norwalk Hospital, where a rape examination was performed. The examination revealed that no vaginal or anal intercourse occurred. The medical report documents what Doe reported with regards to the sexual assault, and it is consistent with her sworn statement to the Norwalk Police Department. *See* State of Connecticut Sexual Assault Medical Report. Hair samples, as well as body fluid and pubic hairs from Doe, as well as samples from Saraceni were sent to the Connecticut Forensics Laboratory. *See* Saraceni's Local Rule 56 Statement ¶¶ 4-5; Doe's Local Rule 56 Statement (admitting ¶¶ 4-5). A pubic hair of a third person, not of Saraceni, was found in Doe's underwear.

## II. Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

knowledge of the alleged statements made directly to her and the statements would be admissions of a party opponent. Thus, the statements themselves, are properly part of the summary judgment record.

256 (1986) (party must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of her pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable [fact-finder] could [find] for the non-moving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof at trial, then summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

### III. Discussion

With respect to a section 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages.  *See* 42 U.S.C. § 1983.  Saraceni has raised the issue whether Doe can prove that Saraceni's actions were taken under color of law, and whether Doe can make out a prima facie case for sexual assault such that she can prove a deprivation of a constitutional or statutory right.

#### A. Color of Law

Saraceni argues that no reasonable fact-finder could find that he acted under color of law, and that, as a result, Doe cannot maintain her section 1983 claim, her only federal claim.  Apparently Saraceni would argue that, if I did not have jurisdiction to hear the section 1983 claim, then, under *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), I should also

dismiss the pendant state law claims.

The Second Circuit has repeatedly defined the term "color of law." "Courts have had frequent occasion to interpret the term 'color of law' for the purposes of section 1983 actions, and it is by now axiomatic that 'under color of law means under pretense of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" *Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). Stated differently, the "'[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of' state law." *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The central question, "is not whether the actual abuse was part of the defendant's official duties but, rather, whether the abuse was made possible only because the wrongdoer is clothed with the authority of state law." *Walsh*, 194 F.3d at 51 (citations omitted).

"[T]here is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law." *Pitchell*, 13 F.3d at 548. The issue whether a police officer was on or off duty is not dispositive. *Id.* (citing *Rivera v. La Porte*, 896 F.2d 691, 695-96 (2d Cir.1990)). Indeed, "liability may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department." *Pitchell*, 13 F.3d at 548. *See also United States. v. Giordano*, 442 F.3d 30, 44-47 (2d Cir. 2006) (finding that mayor acted under color of law when he sexually abused two minors even though the abusive acts were taken for personal reasons and were "far removed from the scope of official duties").

Here, there is no dispute that Saraceni was off-duty. There is also no dispute that he was

wearing his police uniform and was seated at his police desk in the police substation when the alleged assault occurred. Under Doe's version of the facts, Saraceni handcuffed her with his police handcuffs at some point during their encounter. Moreover, fundamentally, the nature of Doe and Saraceni's interactions stemmed from Saraceni's status as a police officer. Considering the evidence in the light most favorable to Doe, a reasonable fact-finder could infer that she trusted Saraceni because he was a police officer.[2] Indeed, her relationship with Saraceni arose out of police business, and she frequently discussed police business with him. Defendant's Exhibit A, Doe's sworn statement to the Norwalk Police Department, indicates that, under Doe's version of events, she was not attracted to Saraceni and had no desire to have any type of sexual relationship with him. A reasonable fact-finder could therefore draw the inference that she went to the police substation at 12:45 a.m. to see Saraceni because she trusted that he would not sexually assault her, and if she had not trusted him, she would not have gone to the police substation. A reasonable fact-finder could further infer that her trust emanated from the fact that Saraceni was a police officer, lawyer, or both. In other words, a reasonable fact-finder could find that the abuse, that is the alleged sexual assault, was "made possible only because Saraceni was cloaked with the authority of state law." *See Walsh*, 194 F.3d at 51.

Thus, I cannot say as a matter of law that no reasonable fact-finder could find that Saraceni did not act under color of law.

B. Prima Facie Case of Sexual Assault

Pursuant to Conn. Gen. Stat. § 53a-73a(a)(1), "[a] person is guilty of sexual assault in the

---

[2] Another reasonable inference would be that Doe trusted Saraceni because he was a lawyer conducting legal business on her behalf.

fourth degree when . . . such person intentionally subjects another person to sexual contact who is . . . mentally incapacitated to the extent that such other person is unable to consent to such sexual contact, or . . . physically helpless . . . ." The term "sexual contact" means "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . . Conn. Gen. Stat. § 53a-65(3). The term "mentally incapacitated" means "that a person is rendered temporarily incapable of appraising or controlling such person's conduct owing to the influence of a drug or intoxicating substance administered to such person without such person's consent. Conn. Gen. Stat. § 53a-65(5). In addition, the term "physically helpless" means "that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." Conn. Gen. Stat. § 53a-65(6).

Saraceni, without citing a single case or statute, argues that Doe cannot make out a prima facie case of sexual assault because, in effect, she blacked out and therefore cannot testify to the particular acts she claims Saraceni committed. Moreover, Saraceni characterizes the Norwalk Hospital rape examination and Forensic Evidence report as "negative." The problem with that characterization is that it considers the evidence in the light most favorable to Saraceni, not Doe. At summary judgment, however, I must draw all reasonable inferences in favor of the non-moving party, and must consider the evidence in the light most favorable to Doe.

Applying that standard, a reasonable fact-finder could find in her favor on her claim for sexual assault against Saraceni. Doe has clearly put forward enough evidence from which a reasonable fact-finder could conclude that she was unable to communicate her unwillingness to have sexual contact with Saraceni, that is, she asserts that she blacked-out. Because Doe

-9-

blacked-out, it would obviously be difficult for her to testify directly about the particular acts she claims Saraceni performed. Still, a fact-finder is permitted to consider circumstantial evidence, and indeed, an entire case may be built upon circumstantial evidence. Here, Doe blacked-out. She woke up the next day wearing no underwear, and she noticed blood on the toilet paper when she went to the bathroom. She has submitted evidence that Saraceni called her the day after the alleged assault and indicated that both he and Doe had been naked the night before. He also told her that they had "fooled around." If all of that evidence is presented at trial, a reasonable fact-finder could find that "sexual contact" occurred, and that it occurred without Doe's consent because she was physically incapacitated and/or unconscious.

Saraceni emphasizes the lack of physical evidence to corroborate Doe's version of events. The physical evidence, i.e., the rape examination report and the forensic report, are not, in fact, "negative" as Saraceni characterizes them because those reports do not exclude the possibility of sexual assault. Rather, the reports indicate that no sexual intercourse occurred. That fact is entirely consistent with Doe's version of events, because she reported in her sworn statement to police that Saraceni had told her over the telephone that they did not have sex. The fact that no sexual intercourse occurred obviously does not mean that there was no sexual assault, as that term is defined by Conn. Gen. Stat. § 53a-73a(a)(1).

In short, while the physical evidence does not compel a verdict for Doe, a reasonable fact-finder could find in her favor. Ultimately the question whether a sexual assault occurred is a question for the fact-finder, to be determined after considering all of the evidence and in particular, after making judgments based on credibility and demeanor. In a case such as this, credibility is particularly important, and thus must be resolved at trial, because I am not permitted

to judge credibility at summary judgment.

                C.        <u>Operation of Vehicle While Intoxicated</u>

Saraceni also argues that, even if Saraceni "forced" Doe to drive home while intoxicated, he would not be liable because there is no duty under Connecticut law to prevent a third-person from driving while intoxicated. *See* Saraceni's Memorandum of Law in Support of Motion for Summary Judgment at 18-21. I do not understand Doe to be making a separate claim based upon Saraceni's alleged conduct in "forcing" Doe to drive home while intoxicated. *See* Amended Complaint (doc. #41); Doe's Memorandum in Opposition to Summary Judgment (failing to discuss any such claim). Rather, I understand that Doe has brought a section 1983 claim based upon an alleged sexual assault committed by a police officer, and the allegations relating to how she got from the police substation to her home are intended to complete her version of the story. To the extent that Doe is asserting a claim based solely upon Saraceni's alleged conduct in forcing her to drive while intoxicated, that claim has been waived by the failure to oppose the summary judgment motion on that basis.

**III.    Conclusion**

For the foregoing reasons, Saraceni's Motion for Summary Judgment (**doc. # 57**) is **DENIED**.  Counsel are instructed to call chambers to schedule a telephone conference for purposes of choosing a trial date.

It is so ordered.

Dated at Bridgeport, Connecticut, this 24th day of May 2007.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge